## Campbell, George v. United States.

No. 661, Ind. T. Opinion Filed October 24, 1908.

(97 Pac. 1052.)

1.  LARCENY—Ownership—Evidence. In cases of larceny it is essential for the prosecution to prove that the property was feloniously taken from the person named in the indictment as the owner, but this does not require that in every case direct proof of ownership shall be given.

2.  EVIDENCE—Corpus Delicti. It is not essential that the corpus delicti should be established by evidence independent of that which tends to connect the accused with its perpetration. The same evidence which tends to prove one may also tend to prove the other, so that the existence of the crime and the guilt of the defendant may stand together inseparable on one foundation of circumstantial evidence.

3.  LARCENY—Nonconsent—Evidence. The want of consent of the owner to the taking of his property alleged to have been stolen is an essential ingredient of the crime of larceny. The fact of nonconsent to the taking may be proven by facts and circumstances which sufficiently show that the property was feloniously taken, and the fact that the owner caused search to be made for the stolen property is a cogent circumstance to show want of consent to the taking.

4.  INSTRUCTIONS—Repetition. Where a similar instruction has been given a requested instruction need not be given.

5.  EVIDENCE—Hearsay—Noncitizenship in Indian Tribe—Declarations. Reputation or hearsay is admissible in all matters of pedigree, and so the declarations of the defendant that he is a white man, and his general reputation for 25 years that he was a white man, is sufficient when uncontradicted to prove noncitizenship in any Indian tribe or nation.

6.  APPEAL—Review—Failure to Preserve Record. Where the record shows no objection was made and no exceptions taken, the error will not be considered by the court except in the interest of justice.

7.  ON MOTION FOR REHEARING—Appeal and Error—Harmless Error— Substantial Justice. When a defendant is clearly proven to be guilty, this court will not reverse a conviction upon any technicality or exception which does not affect the substantial rights of the defendant.

(Syllabus by the Court.)

*Error from the United States Court for the Central District of the Indian Territory, at Durant; Thomas C. Humphrey, Judge.*

Campbell George was convicted of larceny, and brings error. Affirmed. Appealed to the United States Circuit Court.

Campbell George was indicted in the United States Court in the Indian Territory for the Central District of said territory, sitting at Atoka, which indictment was returned by the grand jury and filed in open court on the 10th day of October, 1903, wherein said defendant was charged with having on the 29th day of April, 1903, within that jurisdiction, committed the offense of larceny of a horse, the property of John Adkins.

The defendant entered a plea of not guilty, and on October 10, 1904, upon trial in said court at Atoka, he was found guilty as charged in said indictment. Whereupon he filed his motion for a new trial, which motion was by the court on November 1, 1904, sustained, and a new trial granted. The defendant having filed a motion for a change of venue the court ordered on January 7, 1905, that the venue be changed to the Durant division of said court, and directed the clerk of said court to forward there a duly certified copy of the indictment, together with the original papers and certified copies of the record entries in said case. At the June, 1905, term of said court at Durant, in said district, a second trial was had, and on June 9, 1905, the jury in said case returned a verdict finding the defendant guilty as charged. On June 13, 1905, the court overruled defendant's motion for a new trial, and sentenced defendant to imprisonment in the United States penitentiary at Ft. Leavenworth for a period of one year and one day.

A writ of error was allowed to the United States Court of Appeals for the Indian Territory, at South McAlester, and this case was pending there on the passing of that court, with the organization of the state of Oklahoma, and was duly removed to the Supreme Court of Oklahoma by virtue of the provisions of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267) and the Constitution of Oklahoma, and is now before this court by virtue of section 170, art. 7, Const. Okla., and chapter 28 of the Sessions Laws of the First Session of the Legislative Assembly of the state of Oklamoma, entitled "An act creating a Criminal Court of Appeals, and defining the jurisdiction of said court," approved May 18, 1908 (Laws 1908, p. 291, c. 28).

John Adkins, the owner of the horse charged to have been stolen, was not present at the trial to testify as to the identity and ownership of the horse or his want of consent to the taking of the same by the defendant.

J. H. Riddle was the first witness called on behalf of the government. He testified that he lived near Globe, about 16 miles northwest of Coalgate and about 8 miles east from Pine and that John Adkins was at his place on Wednesday, the third day after his horse was stolen, inquiring for the horse, and, at his request, witness went with him, hunting for the horse . They found in the woods where a horse had been roached. The mane that had been cut off was black. They then went west to the "Pot" country, to the home of one Walter Vail. When they arrived there, Vail was not at home, and Adkins arranged with witness to go to the George place, in the Comanche country. Adkins then returned home. Witness proceeded west, and met Dera Duncan, who informed him that he had seen defendant with such horse; and, when witness reached Bob George's place, he found the horse there. Bob George is a brother of the defendant, and his place is about 130 miles from where the horse was taken. This was about two weeks after the horse was taken. Witness took the horse and brought him back, and delivered him to Adkins, who was a railroad laborer, living in a tent near Coalgate. The horse had a black mane, and had been roached, and was branded "A. D." Witness further testified that Adkins was a white man, and his camp was in the Choctaw Nation.

S. T. Stevens was the second witness for the government. He testified that he lived at Pine, was acquainted with defendant, Campbell George, and with Walter Vail, and that they were in his store on Sunday, the 29th of April, 1903,—the night of that day the horse was taken,—and that Pine is about 15 miles north of Coalgate.

Mrs. Fanny Pope was the third witness for the government. She testified that in April, 1903, she was living at Adelia post-office, about five miles southwest of Pine, and that she knew Campbell George and Walter Vail, and that they passed her house

on Sunday, and that she heard that Adkins lost a horse that night.

J. R. Hutchins was the fourth witness for the government. He testified that he knew the defendant, Campbell George, and in the spring of 1903 he met him and another man about three miles east of Mill Creek in the Chickasaw Nation, and that Mill Creek is about 15 miles west of Coalgate. This was on a Monday morning, about 9 or 10 o'clock. Dera Duncan was riding in the buggy with witness. Defendant and his fellow traveler were going west and were riding very fast. Defendant, Campbell George, was riding what witness described as a bay, chunky built, roached mane pony, and the other man was riding a bay mare. Witness was acquainted with J. H. Riddle, and met him a few days later, looking for Adkins' horse.

Dera Duncan was the fifth witness for the government. He testified that he was living at Mill Creek in the spring of 1903, and met defendant and another man in the road near Mill Creek, and now recognizes defendant as one of the men he met. Defendant was riding a bay pony that had a little white on his nose, and white specks on his hip, and mane roached, and also branded. The man with defendant was riding a bay mare. Witness saw the same horse about 10 or 12 days later in a livery stable at Mill Creek, where he pointed it out as the horse defendant was riding on that Monday morning when witness, in buggy with the witness Hutchins, met the defendant. The defendant and the man with him were going west, and were riding at an unusually fast trot.

J. J. Ward was the sixth witness for the government. He testified that in the spring of 1903, he lived west of Coalgate, and knew a man that was working in a tie camp named Adkins, and knew that he lost a horse about the same time witness lost a bay mare, and from information given by J. R. Riddle witness went to the Bob George place, in the Comanche country, and there found his bay mare, and that at that time Adkins' camp was about two miles from where witness lived. Witness does not know where Adkins is now.

J. H. Riddle, recalled on behalf of the government, testified that he has known defendant's family about 25 years, and that they are not Indians, and never claimed to be, and are noncitizens.

S. D. Stevens, recalled on behalf of the government, testfied that he has known Walter George, father of defendant, and his family for over four years; that they are renters in his neighborhood; that he never heard them claim to be citizens; that they are regarded as noncitizens; that they seem to be white people.

R. L. Williams testified on behalf of the government that he was a resident of Durant, lawyer by profession, and had seen defendant and his father several times, and had known of them for several years, and that he knew, by general reputation, that they were noncitizens, and knew, by reputation, that the defendant's mother was a noncitizen.

There were no witnesses sworn or testimony offered on behalf of the defendant. ·

*J. G. Ralls,* for appellant.

On the question of proof of ownership of stolen property · and nonconsent for taking: *Oxier et al. v. United States,* 1 Ind. Ter. 85, 38 S. W. 331; *Cannada v. State,* 29 Tex. App. 537, 16 S. W. 341; *Garcia v. State,* 26 Tex. 209, 82 Am. Dec 605; *State v. Morey,* 2 Wis. 494, 60 Am. Dec. 439. On the question of proof of citizenship by reputation: *Lucas v. United States,* 163 U. S. 611.

*T. B. Latham* and *W. C. Reeves,* Assistant Attorney General, for appellee.

On the question of proof of ownership of stolen property: 1 Whar. Cr. Law 933; Rapalje on Larceny and Kindred Offenses, § 145; 1 Bishop Cr. Prac., § 707; 1 McClain on Criminal Law, § 601 (612); *State v. Stanley,* 48 Iowa 221; *Barnes v. People,* 18 Ill. 52; *Lawrence v. State,* 4 Yerg. 145. Proof of nonconsent of owner to taking: Rapalje on Larceny and Kindred offenses, 135, 158; *Wilson v. State,* 12 Tex. App. 481; *State v.*

*Osborne,* 28 Iowa. 9. Proof of citizenship by hearsay: *Comstock v. State,* 14 Neb. 205; *Reed v. State,* 16 Ark. 499; *Kelley's Heirs v. McGuire,* 15 Ark. 555.

DOYLE, JUDGE (after stating the facts as above). Twenty two assignments of error are alleged in the petition, and are argued in the brief.

The principal question presented is set forth in the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, fifteenth, and sixteenth assignments of ·error. These all go to the competency and sufficiency of the evidence, to show ownership in John Adkins, and nonconsent of said owner to the taking, as alleged, and to show venue, also the conclusion that the verdict is not supported by sufficient evidence. In this case the able counsel for defendant, mindful of the fact that larceny is the most technical in its distinctions of all common-law felonies, interposed continuous objections to the testimony offered, and said assignments of error involve, first, the objections so made and exceptions taken; second, the refusal to give instructions requested, predicated upon the proposition that all of said testimony was hearsay, and therefore incompetent. In support of his contention counsel for Appellant cites the cases of *Oxier et al. v. United States,* 1 Ind. Ter. 85, 38 S. W. 331; *Cannada v. State,* 29 Tex. App. 537, 16 S. W. 341. We do not believe that the rule enunciated in the foregoing cases applies to this case at bar. To support a conviction there must be evidence that the property in question was actually stolen. In what manner may this proof be made? Must it always be direct and positive? Is it absolutely essential in all cases that the proof of the *corpus delicti* should be established independent of the other elements of the offense? In many, and perhaps most, cases to support a conviction, direct proof that the property was feloniously taken from the person named in the indictment as owner is necessary. Yet it is not essential in all cases that there should be any direct evidence upon this point. The application of the rule must always depend upon the facts of the case. Appellate courts should carefully consider

and guard against so construing the law that a proper rule of evidence would be preverted into a means of escape from the merited punishment of an offender. Circumstantial evidence may be resorted to for the purpose of proving the *corpus delicti* in the same way and to the same extent that it may be for the purpose of connecting the accused with the commission of the offense. Mr. Bishop, in discussing the subject, says:

"If we look at the matter as one of legal principle, we can hardly fail to be convinced that while the *corpus delicti* is a part of the case which should always receive careful attention, and no man should be convicted until it is in some way made clear that a crime has been committed, yet there can be no one kind of evidence to be always demanded in proof of the facts any more than of any other." (1 Bishop on Criminal Procedure, § 1071).

Mr. McClain says:

"The *corpus delicti* need not be shown by direct evidence, that is, there need not necessarily be proof of loss of property by theft distinct from the fact showing that property found in the defendant's possession was wrongfully taken from the owner thereof. Proof of the act is not necessary where the circumstances can only be explained by a felonious act." (1 McClain on Criminal Law, § 612).

Neither is it essential that the *corpus delicti* should be established by evidence independent of that which tends to connect the accused with its perpetration. The same evidence which tends to prove one may also tend to prove the other, so that the existence of the crime and the guilt of the defendant may stand together inseparable on one foundation of circumstantial evidence.

"Absolute positive evidence is not necessary to establish the *corpus delicti* of a crime, but proof thereof may be made by circumstantial evidence; and, if there is a reasonable inference deducible from the evidence of the existence of the *corpus delicti,* it is the duty of the court to submit the question of the sufficiency and weight of the evidence tending to support that inference to the jury." (*Martin v. State,* 125 Ala. 64, 23 South. 92 —following *Granison v. State,* 117 Ala. 22, 23 South. 146; *Roberts v. State,* 61 Ala. 401.)

"The same general evidence of property is admissible in criminal cases as in civil cases. Possession with general acts of ownership over the horse are sufficient to warrant a verdict where there is no evidence offered to rebut or contradict the right of property." (*Barnes v. People,* 18 Ill. 52 65 Am. Dec. 699).

It never was the rule of the common law that nonconsent must ,be shown, and that the owner of the stolen property must be produced as a witness to prove such nonconsent, and consent is a matter simply of defense. The present laws of our state provide a penalty for stealing domestic animals, but do not define the offense, but simply provide that, if any person shall steal the animals mentioned, he shall be guilty of a felony. Therefore the common-law rule now applies to our state, but here in this case nonconsent is averred in the indictment and must be proved. We believe the evidence offered was sufficient. Mr. McClain in discussing the question says:

"Where the question of want of consent of the owner becomes material, it is not necessary to prove such want of consent by the evidence of the owner himself. It may be shown by others having knowledge of the facts." (1 McClain on Criminal Law, p. 558).

In *People v. Jacks,* 76 Mich. 218, 42 N. W. 1134, Sherwood, C. J.. in speaking for the court, says:

"We think the fact of nonconsent to the taking may, however, be proved by any other person having knowledge of the facts as well as by the owner or the person having control of the property at the time, or by facts and circumstances which sufficiently satisfy the jury that the property was feloniously taken."

In *Kemp v. State,* 89 Ala. 52, 7 South. 413, the court says.

"There was evidence tending to connect the defendant with the commission of the offense charged. His presence sufficiently near the scene of the crime to have been the author of it, and the evidence that he was provided with the means with which the act was done, appears in evidence. It further appears that he hastily left the immediate vicinity. This was certainly proper to go to the jury as a basis for an inference of guilt.   *   *   * The fact that the owner caused search to be made for the stolen

property is a cogent circumstance to show want of his consent to the taking."

Rapalje on Larceny and Kindred Offenses, § 135; *Rains v. State,* 7 Tex. App. 588; *State v. Osborne,* 28 Iowa, 9; *People v. Dean,* 58 Hun. 610, 12 N. Y. Supp. 749; *Spruill v. State,* 10 Tex App. 695.

It is also insisted that the evidence is insufficient to show venue. We think the fact that the larceny was committed within the jurisdiction of the Central District of the Indian Territory was sufficiently proved, and no error was committed by the trial court in so ruling.

We have set out the evidence somewhat in detail, for the purpose of showing that it presented a proper case for the determination of the jury under the authorities above quoted. The circumstances shown, standing as they do wholly uncontradicted and unexplained, lead to but one natural conclusion, namely, that the larceny charged was committed, and that the defendant, Campbell George, committed it. On the Sunday the horse disappeared he and Walter Vail were seen by various witnesses near the camp of John Adkins. They left there that day or night, and on the next day were seen near Mill Creek, defendant with the Adkins horse, and Walter Vail with the witness' (Ward's) horse. They were riding rapidly westward. The horse defendant was riding had been roached. It is shown that John Adkins immediately instituted a search for his horse, and with witness Riddle found, near his home, where the horse had been roached. He then, with Riddle, traced and followed his horse to Walter Vail's in the "Pott" country. They found Walter Vail gone from his home. Riddle then, on Adkins' request, proceeds to the Comanche country, and finds at the place of the defendant's brother, Bob George, Adkins' horse and Ward's horse, which had been stolen about the same time. Riddle takes possession of Adkins' horse, brings him back, and delivers him to Adkins. The horse is identified by two witnesses as the one defendant had possession of. The effect to be given to the foregoing facts is strongly re-enforced by the failure to explain defendant's possession of the

horse, or to offer the testimony of his brother, Bob George, or Walter Vail. After a careful examination of the record we find there is no such absence of evidence of guilt as to warrant the interference of this court, and we have no hesitation in saying that the facts and circumstances thus shown, when all taken together, and in the absence of any explanation, are sufficient to produce in the minds of reasonable men an irresible conviction of the defendant's guilt.

The next errors assigned, being the twelfth, thirteenth, and fourteenth, go to the question of the sufficiency of the instructions on circumstantial evidence, and 'the refusal of the court to give the instructions requested by defendant. One of the instructions so requested is as follows:

"The court instructs the jury that the facts relied upon to show the defendant's guilt must not only be inconsistent with his innocence, and, if the facts are susceptible of two interpretations, one of innocence and one of guilt, the interpretation of innocence must be accepted on the defendant's behalf."

This was refused by the court, and the jury was instructed as follows:

"To work conviction, each of the necessary allegations to establish the guilt of the accused must be proven by competent evidence beyond a reasonable doubt, and the facts and circumstances proven must be not only inconsistent with the innocence of the accused, but inconsistent with any other conclusion but that of guilt."

This instruction is not as complete as it should be, but in our opinion it is as clear and complete as the instruction requested, and under the rule that, where a similar instruction has been given, a requested instruction need not be given, in our opinion no error was committed.

The seventeenth assignment of error is based upon the fact that, after resting the case, defendant declined to offer any testimony. The United States attorney immediately requested that the case be reopened for the purpose of introducing further evidence as to the citizenship of the defendant. The court granted this permission over the objection of defendant. This request

was addressed to the sound discretion of the trial court, and, unless it appears that such discretion was abused to the prejudice of the substantial rights of the defendant, this court cannot consider the same. In our opinion there was no error in the ruling of the trial court.

The eighteenth, nineteenth, twentieth, and twenty-first assignments of error are predicated upon the proposition that there was none other than opinion and hearsay evidence offered to sus-tain the allegation of the indictment that the defendant was not then and there a member of any Indian tribe or nation, and there was no competent evidence in proof of said allegation.

"To establish pedigree, family hearsay is essential, since, if what has been handed down in families cannot be in this way proved, pedigree could not in most cases be proved at all." (Wharton's Crim. Ev. § 233. See, also, 234).

In *Comstock v. State,* 14 Neb. 205, 15 N. W. 355, Lake, C. J., says:

"The next objection is to the ruling of the court on the admission of evidence. The prosecuting witness was asked what relation she bore to the prisoner, and answered that she was his daughter. It is claimed that this was incompetent testimony, for the reason that the fact of her parentage was one of which necessarily she could know nothing except as hearsay. We do not regard this objection as sound. It is certainly competent for one who from his earliest recollection has been a member of one's family, given his name, and reared in the belief, and in all ways given to understand that he is a son in the household, to testify of his parentage. His testimony may not be satisfactory or conclusive of the fact, but it is at least admissible for what it is worth in the minds of the jury, and clearly sufficient to make a *prima facie* case, thus throwing the burden of overcoming it upon him who controverts it."

To the same effect is the doctrine in the case of *Reed v. State,* this being a case where Wyandotte Indians were passing through Desha county, Ark., and camped for a few weeks in a white settlement, and while there one of their number was killed by defendant, Reed. Trial and conviction was had and an appeal taken to the Supreme Court of Arkansas, one of the

grounds being that, as deceased was alleged to be a Wyandotte Indian, proof of the same was essential, and could not be made by hearsay evidence. Chief Justice English in delivering the opinion of the court, among other things, said:

"The court below was right in deciding that it was com-. petent to prove by common reputation that the deceased was a Wyandotte Indian. The people of this country being generally Anglo-Saxon, a person coming into any community of a different race bears upon him such peculiar marks of his nationality as to enable the community very soon to form an opinion in reference to it sufficiently certain for all the purposes of legal identity. It stands upon the same footing as with the proof of pedigree. The witness Sexton stated that he heard from those with the Indian that was killed that he was a Wyandotte Indian, and to this evidence the defendant objected, and excepted to its admission by the court. This statement, if taken by itself, is not satisfactory, but, when taken in connection with the testimony of the other witnesses who testified on the trial, it was doubtless competent evidence. * * * These remarks are made in reference to the competency of the testimony. The jury were the judges of its sufficiency upon this point as upon others."

We think the testimony offered on behalf of the government was competent, and at least clearly sufficient to make a *prima facie* case. In our opinion the trial court committed no error in ruling that said testimony was competent.

It is claimed in conclusion, by the twenty-second assignment of error, that the court errer in delivering to the jury the certified copy of the indictment containing a copy of the former verdict printed upon it, the name of Campbell George, and the name of the foreman having been added to the printed form. The record shows that no objection was made on the part of the defendant to this certified copy, and counsel for defendant offers no argument in support of this last assignment. It is a rule of this court that assignments of error based upon rulings where the record shows that no objection was made, and where no exception was taken, will not be considered by this court, except in the interest of justice.

We believe the defendant had a fair and impartial trial. Un-

der the well-settled rule, where there is sufficient evidence in the record upon which the verdict may be fairly based, as in this case, this court will not reverse the judgment on the ground of the insufficiency of the evidence. We find no prejudicial error in the record, and for the reasons given in this opinion the judgment of the United States Court of the Central District of Indian Territory must be affirmed.

Judgment affirmed.

FURMAN, Presiding Judge, and BAKER, Judge, concur.

### On Motion for Rehearing.

### Denied February 20, 1909.

Per Curiam. Through respect for the able counsel who represents the defendant, we have carefully gone over the entire record in this case, in connection with the motion for a rehearing, and the authorities cited. The result of our deliberations has strengthened our confidence in the views expressed and the conclusion reached in the original opinion. It would be a waste of time to repeat what was said there.

We desire to reaffirm the announcement, heretofore made, that when a defendant is clearly guilty this court will not reverse a conviction upon a technicality or exception which does not affect the substantial rights of the defendant. This is the settled policy of this court.

We have no sort of doubt of the guilt of the defendant, and while there may have been some irregularities in his trial, yet we believe that he has been fairly tried and properly convicted. We cannot understand how an honest man could act as the testimony in this case shows that defendant has acted. His conduct is absolutely inconsistent with his innocence, and adds increased force to the testimony of the prosecution, and makes practically certain that which otherwise might have been open to dispute. He had once before been convicted. He therefore knew the convincing character of the evidence against him. If his connection with the horse was honest, he could have explained it by producing Bob George and Walter Vail as witnesses in his behalf.

But in the face of the former conviction, and with a full knowledge of the testimony against him, which, if untrue, could have been contradicted or explained by Walter Vail and Bob George, the defendant remained as dumb as an oyster, and refused to place these witnesses on the stand or to account for their absence, but depends alone upon the ability of his counsel to make a purely technical defense. It is unconceivable to us how an innocent man could be induced to adopt such a course. If upon any question in the case the testimony for the prosecution was uncertain, this uncertainty was cured by the conduct of the defendant. An honest man, when charged with theft, and proven to have been in possession of recently stolen property, will take some steps to show the good faith of such possession and to vindicate his character. It is true that the law does not require him to do so, but if it is shown that witnesses are accessible to him by whom he can prove his good faith, if he did act in good faith, and he refuses to produce those witnesses, he cannot complain if this failure is considered as a circumstance against him. Such conduct is a just basis for the conclusion that if those witnesses were produced their testimony would not contradict, but would confirm, the testimony against the defendant.

By failing to offer any evidence when it was in his power to do so, if he was innocent, the defendant cannot be heard to complain if the jury placed the strongest construction possible against him upon the evidence offered by the prosecution, and this court approves the verdict at which they arrived. It is our purpose to sustain the action of trial courts and the verdicts of juries in their efforts to enforce the law, punish criminals, and thereby protect honest and lawabiding people in the peaceable enjoyment of their property and lives, and, when a defendant is proven to be guilty, he need not look to this court for relief upon any technicality which does not affect his substantial rights.

Motion for rehearing denied.