## GEO. W. JACKSON v. STATE.

No. A-1744.    Opinion Filed March 21, 1914.

(139 Pac. 324.)

1. **LARCENY—Corpus Delicti—Proof.** In a prosecution for larceny of domestic animals, it is not essential that the corpus delicti should be established by evidence independent of that which tends to connect the defendant with its perpetration. The same evidence which tends to prove one may also tend to prove the other, so that the existence of the crime and the guilt of the defendant may stand together inseparable on one foundation of circumstantial evidence.

2. **SAME—Elements—Want of Consent—Proof.** The want of consent of the owner to the taking of his property alleged to have been stolen is an essential ingredient of the crime of larceny of domestic animals. The fact of non-consent to the taking may be proven by facts and circumstances which sufficiently show that the property was feloniously taken.

3. **SAME—Sufficiency of Evidence.** In a prosecution for larceny of domestic animals, circumstantial evidence examined, and held sufficient to sustain the conviction, and that no reversible error was committed on the trial.

*Appeal from District Court, Atoka County;*

*Robt. M. Rainey, Judge.*

George W. Jackson was convicted of the larceny of domestic animals, and appeals. Affirmed.

*J. G. Ralls,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen. (*C. J. Davenport,* Asst. Atty. Gen., of counsel), for the State.

DOYLE, J.  Plaintiff in error, George W. Jackson, was indicted in the district court of Atoka county, on the 17th day of September, 1909, whereby he was charged with having on the 22d day of February, 1909, committed the crime of stealing six head of cattle, the property of Dave Crawford.  Upon his trial, the jury returned a verdict of guilty as charged and assessed his punishment at imprisonment in the state penitentiary for six years.  This appeal is prosecuted from the judgment and sentence rendered in accordance with the verdict of the jury on the 2d day of December, 1911.

The evidence was substantially as follows:

C. F. Lewis, the first witness called, testified that he lived near Coalgate, and in February, 1909, he went with Dave Crawford to hunt some of Crawford's cattle that were missing; that they found and followed cattle tracks mixed with the tracks of two horses, one shod and the other a barefoot horse, from near mine No. 14 down Boggy creek; that about two miles from Boggy Depot the tracks led into a field, and there they saw where the cattle had rested by lying down in the corner of the field; that the next morning they followed the same tracks for about eight miles from Boggy Depot, and there found the cattle described in the indictment in the defendant's pasture; that they had Dave Crawford's brand, "Bar W," and a fresh brand figure "14"; that they drove the cattle back to Crawford's pasture in Coal county.

Will Cummings, the second witness for the state, testified: That he lived at Lehigh and was a deputy sheriff; that he went with Dave Crawford and C. F. Lewis.  That they followed some cow tracks mixed with horse tracks, and Monday they tracked them to near Lehigh.  On Tuesday they tracked them to where the cattle went into a field and lay down; and on Wednesday they tracked them from the field into the defendant's pasture. That the tracks showed that the cattle had been let out of the

pasture by laying the fence down, and then putting it up. The cattle were branded "Bar W," also a fresh brand figure "14." That they stayed at the defendant's place that night, but the defendant did not appear. That witness met the defendant the next day at Boggy Depot, as they were driving the cattle back, and he said they were his. cattle, and that he was going to make an affidavit that they were his cattle. That he went before a justice of the peace and made an affidavit that he was the owner of said cattle. That witness asked the defendant Jackson where he got the cattle, and he said he bought them on the road near Clear Boggy, from two men; that he thought they lived in Atoka. That witness asked him who was present when he bought them, and the defendant said Jim Ross and Col. Shipley. That he said he paid $130 in cash for the cattle. That he just happened to have the cash with him. That this conversation was had before the defendant was arrested. That there was no interruption in or other tracks at the place where the defendant said he bought the cattle. That they found a horse barefooted and a horse that was shod in the defendant's pasture.

W. W. Betts testified that he was with Crawford, Lewis, and Cummings trailing the cattle on the last day before they found them; that figure "14" was the brand of the defendant Jackson and Dumas.

Howard Haskins, the next witness, testified that he lived at Boggy Depot, and saw the defendant Jackson and a man named Bob Ross driving cattle three days before Crawford and his party found the cattle, and they were. the same cattle Crawford took from Jackson's pasture.

Lewis Dawson testified that he lived north of Coalgate, near Dave Crawford, and knew his brand, which was "Bar W"; that he saw the cattle that were found in Jackson's pasture, and they were Crawford's cattle.

C. E. Standfield testified that he. lived at Boggy Depot, and was a deputy sheriff; that Crawford, Lewis, Cummings, and Betts stayed all night at his house; that he saw the defendant Jackson and another man driving the cattle two or three days before they were found in Jackson's pasture; that these were

the same cattle that Dave Crawford drove back; that figure "14" was the defendant Jackson's brand.

Dave Crawford, the owner of the cattle charged to have been stolen, was not present at the trial.

When the state rested its case, the defendant moved the court to direct a verdict of not guilty, which was overruled, and exception allowed. No evidence was offered by the defendant.

The first assignment of error is that the court erred in overruling a motion to quash the indictment. The motion was made upon the ground that there was no legal evidence before the grand jury to support it. Upon the face of the record, the motion to quash was properly overruled.

The second assignment is that the court erred in overruling the defendant's motion for a continuance. This motion was based on the absence of Jim Ross, Barney Briscoe, Willis Fairchild, and Caleb B. Smith. The record shows that the defendant had caused subpoenas to issue for these witnesses, and that the sheriff was unable to serve them, because Jim Ross had left Atoka county six weeks prior to that time, and was a fugitive from justice; that Briscoe had gone to Arkansas, and the others could not be found in Atoka county. There was no showing that there was any probability that the attendance of these witnesses could be secured at the next term of court. The record before us does not indicate any abuse of discretion in overruling the motion.

The third assignment is that the trial court erred in overruling the defendant's motion to direct a verdict of not guilty. Under this assignment it is contended that the evidence is insufficient to show non-consent of the owner of the cattle to the taking. The precise question here presented was considered and the authorities reviewed in the case of *Campbell George v. United States,* 1 Okla. Cr. 307, 97 Pac. 1052, 100 Pac. 46. The opinion is in part as follows:

"In many, and perhaps most, cases, to support a conviction, direct proof that the property was feloniously taken from the person named in the indictment as owner is necessary. Yet it is not essential in all cases that there should be any direct evi-

dence upon this point. The application of the rule must always depend upon the facts of the case. Appellate courts should carefully consider and guard against so construing the law that a proper rule of evidence would be perverted into a means of escape from the merited punishment of an offender. Circumstantial evidence may be resorted to for the purpose of proving the *corpus delicti* in the same way and to the same extent that it may be for the purpose of connecting the accused with the commission of the offense. Mr. Bishop, in discussing the subject, says: 'If we look at the matter as one of legal principle, we can hardly fail to be convinced that while the *corpus delicti* is a part of the case which should always receive careful attention, and no man should be convicted until it is in some way made clear that a crime has been committed, yet there can be no one kind of evidence to be always demanded in proof of the facts any more than of any other.' 1 Bishop on Criminal Procedure, sec. 1071. Mr. McClain says: 'The *corpus delicti* need not be shown by direct evidence; that is, there need not necessarily be proof of loss of property by theft distinct from the fact showing that property found in the defendant's possession was wrongfully taken from the owner thereof. Proof of the act is not necessary where the circumstances can only be explained by a felonious act.' 1 McClain on Criminal Law, sec. 612. Neither is it essential that the *corpus delicti* should be established by evidence independent of that which tends to connect the accused with its perpetration. The same evidence which tends to prove one may also tend to prove the other, so that the existence of the crime and the guilt of the defendant may stand together inseparable on one foundation of circumstantial evidence. * * * Mr. McClain, in discussing the question, says: 'Where the question of want of consent of the owner becomes material, it is not necessary to prove such want of consent by the evidence of the owner himself. It may be shown by others having knowledge of the facts.' 1 McClain on Criminal Law, p. 558."

In our opinion all the elements constituting the crime of larceny of domestic animals were proved by uncontradicted evidence. A careful consideration of the whole case leads to the conclusion that no error was committed at the trial to the prejudice of the substantial rights of the defendant.

The judgment of the district court of Atoka county is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.