E. G. HALL, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12411.

Criminal Court of Appeals of Oklahoma.

May 29, 1957.

Rehearing Denied June 26, 1957.

R. A. Howard, Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The defendant was indicted by a grand jury March 19, 1953; the indictment filed in the District Court in the following form:

"In the Name and by the Authority of the State of Oklahoma: At the January 1953 term of the District Court of Carter County, State of Oklahoma, begun and held at the City of Ardmore in

said county, on the 13th day of February Nineteen Hundred and 53 the Grand Jury of said county, good and lawful men, legally drawn and summoned according to law, and then and there examined, impaneled, sworn and charged according to law, to diligently inquire into, and true presentment make of all public offenses against the State of Oklahoma, committed or triable within said County, upon their said oaths, in the name and by the authority of the State of Oklahoma, do present and find that in said Carter County, and State of Oklahoma, on about the 19th day of February in the year of our Lord One Thousand Nine Hundred and 53 and prior to the finding of this indictment that E. G. Hall did commit the Crime of Larceny of Livestock, in the following manner, to-wit:

"That E. G. Hall, in the County and State aforesaid, on the day and year aforesaid, did, unlawfully, wilfully, wrongfully, stealthily, fraudulently and feloniously take, steal, carry away 15 head of hogs, consisting of 3 Chester White sows, weighing approximately 175 lbs each, and 12 Chester White pigs, the personal property of Carl E. Harmon, and C. H. Harmon, without the consent and against the will of the said Carl E. Harmon, and C. H. Harmon, the true owners thereof, and with the unlawful, wrongful and felonious intent then and there on the part of him, the said E. G. Hall, to deprive the said Carl E. Harmon of said property, to wit: 15 head of hogs, and to convert the same to the use and benefit of him, the said E. G. Hall, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State."

To this indictment the defendant moved to quash, alleging that said indictment was not returned and filed according to law, and that no statutory offense is charged against this defendant in said indictment, and at the same time filed demurrer to indictment alleging that there is no such offense as larceny of livestock provided against in the Statutes of Oklahoma; that said indictment in not alleging that the property stolen was domestic animals, and in failing to allege the value thereof, the trial court was without jurisdiction—there being no way to tell whether the offense charged is grand larceny or petty larceny and that said indictment wholly failed to state that defendant had committed any crime, which motion to quash and demurrer were overruled.

Defendant was tried and jury returned the following verdict:

"We, the Jury drawn, empaneled and sworn in the above entitled cause, do, upon our oath find the defendant, E. G. Hall, guilty of the crime of Larceny of Livestock as charged in the Indictment herein and assess his punishment at 3 years."

The defendant appeals to this court upon grounds that court erred in overruling motion to quash a demurrer to said indictment. Argument of plaintiff in error to this contention is that defendant, was charged with Larceny of Livestock and not Larceny of domestic animals. In this connection he recites section 1716 of Title 21 O.S.1951:

"Larceny of domestic animals.—Any person in this State who shall steal any horse, jackass, jennet, mule, cow, or hog, shall be guilty of a felony" and further recites section 271, Title 4 O.S. 1951 which defines livestock to mean any "cattle, horse or mule."

Plaintiff in error argues that larceny of domestic animals creates a separate offense of larceny in that the value of the stolen article does not have to be stated in order to determine whether the offense charged is grand larceny and a felony, or petit larceny and a misdemeanor. He points out that defendant was charged with taking 15 head of hogs which does not come within the statutory definition of livestock, and consequently, indictment was insufficient to charge a crime under the statutes and the fact that defendant was charged with larceny of livestock, whereas the crime set forth in the statute is that of Lar-

ceny of domestic animals, rendered the information fatally defective. No cases were cited by plaintiff in error and none found by writer covering this subject. However, the court has given it much study and consideration and has drawn the conclusion that the description given setting forth a crime is secondary and of little consequence. The phrase under which a statute is related was originated and given birth to by those who compile the statutes after they have been enacted into law by the legislature. They neither constitute any part of the crime nor appear in the language of the law, itself. It was never intended to be more than a title or heading given to a section for index purposes or identification. We find the title "Larceny of domestic animals" was given to section 1716 of Title 21 O.S.1951 by the Revised Laws of 1910, the use of which was continued by West Publishing Company in O.S.A. and in 1951 Statutes. However, laws in previous years have designated the same offense as "Larceny of Livestock." This was true in Session Laws of 1910, p. 187. The crime was so designated in the act of 1911, Laws 1910-11, p. 202, and as late as 1939 in the Amendatory Act of that year. Article 4, Chapter 15, Session Law 1939.

■ It is quite apparent that these terms have been interchangeable and both used to designate same section of law. The plaintiff in error contends, however, that Title 4 O.S.1951 § 271, passed in 1949, clearly defined livestock as any cattle, horse, or mule, and that this statute definition required strict usage of the term livestock, and would not be applicable to designate a crime under section 1716, Title 21 O.S.1951, which bears the heading of "Larceny of domestic animals." We cannot agree with this contention and this court has previously held that where allegations in information or indictment sufficiently charge a crime under a section of the statute the name describing the crime is secondary to the language setting forth the crime. It was held in Shiever v. State, 94 Okl.Cr. 37, 230 P.2d 282, 283:.

"The introductory paragraph of an information is ordinarily equivalent to a mere descriptive label, and a wrong name given to the crime in that part of an information is an irregularity only and not fatal. The character of the offense must be determined by a consideration of the language contained in the charging part of the information."

We are of the opinion the same would apply to an indictment as well as an information. After careful study of the indictment we are satisfied it is sufficient to charge a crime under section 1716 of Title 21 O.S.1951, which is designated Larceny of domestic animals. In the instant case the jury returned a verdict of guilty of Larceny of Livestock *as charged in the indictment*. The same rule would govern the verdict as well as the indictment, especially where the verdict recites the language "as charged in the indictment," which was done in the case at bar.

The plaintiff next contends that there was no direct evidence that the hogs alleged to have been stolen were taken against the will and without the consent of the owner. We deem it necessary to briefly refer to the testimony concerning this point.

■ The testimony relates that Carl Harmon lived at Pooleville and had lived there 45 years, had two sections of land, raised stock, including hogs, and farmed. That his hogs ran on his alfalfa patch. He saw them nearly every day and about February 20th he missed 3 Chester White sows and their pigs. That he began to search for them; found them on E. G. Hall's place. They were branded with witness' brand. He went after the sheriff and brought him back to Hall's place. After some search they found the sows and pigs "nailed" up in a small building 12 x 12. That Hall refused to give them up saying they had been bought by him from a man in Mill Creek, and if Harmon got them he would have to replevin them and they would fight it out in court. Testimony shows considerable argument ensued and became so heated the sheriff felt it necessary to in-

tervene after Hall had pulled a knife. Harmon claimed the hogs with certainty and Hall vigorously contended he bought the hogs from a man named Wines and at the time of trial produced cancelled check where a purchase of hogs had been made. We agree with contention of plaintiff in error that the record does not reveal any positive statement or evidence with reference to non-consent of the owner. This court is fully aware that to support a conviction there must be evidence that the property in question was actually stolen and that corpus delicti should be established independent of the other elements of the offense. From a thorough review of the testimony of the case at bar, this could have been done in a positive manner by a single question by the county attorney directed to the owner, but we must assume through inadvertence, was overlooked. However, under previous decisions of this court the evidence need not always be of a positive nature. In many, and perhaps most cases to support a conviction, direct proof that the property was feloniously taken from the person named in the indictment as owner is necessary, yet it is not essential in all cases that there should be any direct evidence upon this point. This rule appears to have been in existence even as far back as our cases have been recorded. In the case of George v. United States, 1 Okl.Cr. 307, 97 P. 1052, 100 P. 46, the rule was recited in the following language:

> "The fact of nonconsent to the taking may be proven by facts and circumstances which sufficiently show that the property was feloniously taken, and the fact that the owner caused search to be made for the stolen property is a cogent circumstance to show want of consent to the taking."

The most recent opinion upholding this adopted rule can be found in Kilpatrick v. State, 90 Okl.Cr. 276, 213 P.2d 584, 585:

> "In prosecution for larceny, it is not necessary that the complaining witness expressly testify the property alleged to have been stolen was taken without his knowledge or consent. It is sufficient if he relates the circumstance from which the lack of consent may reasonably be inferred."

■ The testimony in the instant case clearly shows that the owner had the hogs alleged to have been stolen, on his alfalfa patch and observed them almost daily, and that about February 20 he missed them for the first time and then began an immediate search and "got out and tried to find them." He went to several places looking for them and finally found them on E. G. Hall's premises. Hall refused to surrender them and Harmon went after the sheriff—certainly such evidence would be a cogent circumstance sufficient to show want of consent, to hold otherwise would be perverting a rule of evidence into a means of escape from the merited punishment of an offender. Jackson v. State, 10 Okl.Cr. 525, 139 P. 324, 326, quotes Bishop on Criminal Procedure. Mr. Bishop in discussing the subject says:

> "If we look at the matter as one of legal principle, we can hardly fail to be convinced that while the corpus delicti is a part of the case which should always receive careful attention and no man should be convicted until it is in some way made clear that a crime has been committed, yet there can be no one kind of evidence to be always demanded in proof of the facts any more than of any other."

We are in accord with the plaintiff in error in that there is an absence of positive or direct testimony as to lack of owner's consent, but we feel that the inference to be drawn from facts as related in the instant case and circumstances shown therein are sufficient to show non-consent.

■ Plaintiff in error indirectly raises a question of venue and contends that location of property was never proven. A careful examination of the record reveals that the county attorney failed to ask any witness as to the venue being in Carter County. However, proof was presented by prosecuting witness that he lived at Poole-

ville on two sections of land where he had lived 45 years. (CM 58.) Your writer has found that there is one Pooleville in Oklahoma and that is shown on the map to be located in Carter County. This has been held to be sufficient to establish venue. In the case of Dodson v. State, 30 Okl.Cr. 135, 235 P. 268, 269, the court said:

> "Courts of the state take judicial notice of the boundaries of the state and the counties of the state and also the geographical location of cities and towns within the state."

This court further said in Evinger v. State, 57 Okl.Cr. 63, 45 P.2d 552, 553:

> "The proper practice is for the state to prove venue by direct and positive evidence, yet the essential test is whether venue has in some way been proven. Venue may be established by circumstantial evidence."

This rule was reaffirmed in the case of Kilpatrick v. State, 90 Okl.Cr. 276, 213 P.2d 584:

> "Where the accused desires to challenge the venue he should do so by a request for an instructed verdict because of insufficient proof of venue, in order that a trial court might determine this issue."

This procedure was not followed in the case at bar, but first mention of the question of venue was set forth in the motion for new trial. Irregardless of whether proper procedure or timely objections were employed, we feel that under previous decisions of this court that venue was adequately proven.

▪ A supplemental brief filed in this cause, in addition to the question of venue, contend the court erred in submitting certain instructions to the jury. We find from the record that no objections were made nor exceptions taken to the court's instructions by the defendant. The defendant cannot now be heard to complain unless the contended errors are of a fundamental nature. We have carefully examined the court's instructions and the things com-

plained of by the defendant are not so fundamentally erroneous as to justify a reversal.

▪ From a careful consideration of the record we find numerous irregularities evidently originating from oversight on the part of the state, none of which are deemed of sufficient importance to constitute a reversal. The testimony of the state and the defendant raised disputed issues which were in the exclusive province of the jury to determine. The instructions of the court were in sufficient form, and fully instructed the jury on the issues involved. The testimony of the state was ample, if believed by the jury, to sustain the conviction. The judgment and sentence of the District Court of Carter County is affirmed.

BRETT, P. J., and POWELL, J., concur.