# CAD PATTERSON v. STATE.

No. A-9598.  Aug. 4, 1939.
(92 P. 2d 1079.)

Hal Welch and Carloss Wadlington, both of Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, P. J.  In this case the information in substance charged that Cad Patterson, in Pontotoc county, on or about the 8th day of March, 1936, did have in his possession about 315 pints of whisky, with the unlawful intent to sell the same.  Upon the trial the jury returned their verdict finding him guilty as charged in the information, and fixed his punishment at a fine of $50 and 30 days' confinement in the county jail.

Motion for new trial was on December 6, 1938, overruled; thereupon the court rendered judgment in pursuance of the verdict.

From the judgment an appeal was perfected by filing in this court February 2nd, 1939, petition in error with case-made attached.

The undisputed facts are that the defendant had a farm a mile east and about a quarter of a mile north of Ada; that three or four officers, in executing a search warrant on the date alleged, searched the defendant's place and found about 300 pints of tax-paid liquor in the barn and 15 or 20 pints in the house; that there were no persons at the place when the search was made. The search warrant was posted on the door of the house.

Charles Shockley, a deputy sheriff, testified that he assisted in the search, that shortly afterwards in a conversation with the defendant, near the courthouse in Ada, the defendant stated that he was storing the whisky there for Louis Crim, and was getting $50 a month for storing it there, that he was making some easy money that way; that he was not selling the whisky; that they loaded the whisky in cars and brought it to the courthouse.

Allen Stanfield testified that he was a deputy United States marshal, and was with Shockley and Alvis Jones when they searched the defendant's place, about a mile east and a quarter of a mile north of town, and found about 30 bottles in the house and about 300 bottles or more in the barn; Alvis Jones, who has since died, had the search warrant and tacked it on the east door.

Cad Patterson took the stand in his own behalf and testified: "I have owned that place about three years. On the 10th day of February, 1936, a taxi drove up there and the driver introduced me to Louis Crim, who wanted to rent the house." He said he had just himself and his wife. He told Crim that he wanted to rent it until his wife, who was on a visit to California, came back, and he rented the house to Crim; did not know that Crim was going to put any liquor out there; that he left on the 28th

of February, and went to a place called Wild Cat and returned Saturday evening, the day the officers raided his place. Sunday morning following, Crim called him over the telephone and told him they raided the place he had rented; that morning he met Charles Shockley and Alvis Jones down on the street, and told Shockley that he was going to take the whisky out, and that was the only conversation he had with Shockley. That he did not tell him that he was letting Louis Crim store liquor out there. That his wife got back from California around the 3rd or 4th of March.

On cross-examination he stated that he did not rent Crim the livestock or the chickens. Asked why he failed to appear on February 29th, the first time this case was called for trial, when his bond was forfeited, answered, "Because there was a man came to me and told me that he could fix it with you for $25, and I thought he had fixed it, and he didn't come in and fix it, I guess." That Bud Rich was the man, but he did not pay him the $25.

On redirect he testified: His wife was at her sister's place about a quarter of a mile from his place; that Bud Rich told his wife that he had fixed it.

C. S. Hubbard testified that he lives on Cad Patterson's place, about 150 yards east of where the officers found the liquor; that Cad Patterson was not living out there when the place was raided; that no one was staying there, but they were going in and out; Cad's wife was down at her sister's at the time, or in town.

On cross-examination he stated that Cad Patterson came back Monday night or Tuesday morning after the search, and his wife came there Monday morning; that he had been milking the cows for them; that he tended all the livestock, including the mules; that Cad came out Sunday morning after the raid; that about twice a day he would see people driving in and parking cars there and coming out with something. Asked if he knew whether

the whisky was put in the barn, answered: "I sure did." Asked how long he had known that, answered, "About 15 days"; that about 10 days before the raid Cad Patterson had been there, and three or four days before the raid Mrs. Patterson came out there and he didn't milk the cows that morning or night.

Charles Musgraves testified that he lives in Ada, and was present when Cad Patterson rented his place to Louis Crim; that Louis Crim was down at the cab station where he was working and wanted to rent a place, and he told him about Cad Patterson's place and then took him out to Cad's place in a taxi. That Cad was not at home, then he took Crim down to Cad's father's place on Main street; Crim said he wanted to buy a place and he had been out there; Cad said he wanted to rent his place; that he was acting as a taxi driver and nothing more.

On cross-examination he stated: "I have known Cad Patterson six or seven years, I have known Louis Crim since he blowed into town; I knew that he had been arrested from time to time for handling liquor"; that nothing was said about the livestock and chickens in the deal; that he thought they could figure that out themselves; that it was just a matter of cab fare to him.

In rebuttal Clyde Kaiser, sheriff, testified that on Monday after Cad Patterson's place was searched on Saturday night, he went out there about 9 o'clock in the morning with another search warrant and found Mrs. Patterson working in the front yard.

Charles Shockley, recalled, testified that another time after his conversation Sunday morning after the raid, Patterson was kidding him about some stuff that we had overlooked, a load of bottled in bond in a wagon down in the lot with manure piled on top of it.

The defendant, recalled, testified that he heard the testimony of Charles Shockley, and admitted that he had

talked to him three or four times, but he did not tell Shockley that he rented that place to store liquor; that he did not tell Shockley that he had not found all the liquor out there, that they were talking about the liquor out there and the use of prods there to find it, and he said to Shockley, "Why didn't you stick them things in that load of manure out there," but he was just kidding Shockley.

Counsel in their brief say:

"There are 17 specifications of error in the brief, but the main propositions which will be argued in this brief are, that the court erred in refusing to direct a verdict for the defendant, and that the court erred in refusing to give several of the defendant's requested instructions, and misdirected the jury. These two propositions will include most of the assignments set out in the petition in error."

The record shows that at the close of the state's evidence in chief, the defendant interposed a demurrer thereto, and moved the court to advise the jury to return a verdict of not guilty, for the reason that the search was illegal in that no return was made on the warrant as required by law, as shown by the search warrant identified by the witness A. W. Oliver, the justice of the peace who issued the same.

It is the settled law of this state that a search warrant, otherwise valid, which has been executed within 10 days from the time it is issued, is not rendered invalid by failure of the officer to make return thereon. Hensley v. State, 53 Okla. Cr. 22, 3 P. 2d 211.

The contention that the evidence was obtained by an illegal search is not tenable.

It follows that the demurrer and motion were properly overruled.

It is contended that the court erred in refusing to give 12 written instructions submitted by the defendant.

Upon a careful examination of the instructions given by the court, and the instructions requested, it is the opinion of the court that the requested instructions were properly refused, as the instructions given fairly state the law of the case.

The instructions given must be considered as a whole, and, when considered together, if they fairly state the law applicable to the case, they will be sufficient.

The statute provides that:

"The keeping, in excess of one quart of any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor, * * * or in any manner permitting any other person to have or keep any such liquors in or about his place of business or his residence, or any place of amusement, or recreation, or any public resort, or any club room; * * * shall be prima facie evidence of an intention to convey, sell or otherwise dispose of such liquors." (Chapter 153, sec. 3, Session Laws 1933, Okla. St. Ann., tit. 37, p. 567, sec. 82, amended section 2626, Sts. 1931.)

Among other instructions the court gave the jury the following:

"You are instructed that in the prosecution of this case, it is not sufficient merely to show that the defendant had charge and control of the premises upon which whisky was found. You must be convinced beyond a reasonable doubt that the defendant was the owner of the whisky, or was in some manner interested in it or voluntarily permitted the use of his premises for storing the same, before you can return a verdict of guilty in this case."

The only error pointed out in the instructions given is the use of the word "gallon," instead of the word "quart," as used in the statute above quoted.

A defendant will not be heard to complain because error was to his advantage. We think the law of the case was stated more fairly to the defendant than the evidence

would warrant. In fact, the defendant was given in the court's instructions the full benefit of the defense sought to be made.

It is further insisted that the evidence is insufficient to support the verdict.

With this contention we cannot agree. It is only where there is a total failure of substantial evidence of the elements or some one element of the offense that this court on appeal is permitted to reverse a conviction on the ground that the evidence is insufficient to sustain it.

All persons aiding in the commission of a misdemeanor are principals and may be so charged, tried and convicted.

As we view the evidence in this case, it cannot, with propriety and due respect for the law, be held that there is an absence of competent evidence on which to base the conviction.

The case was ably prosecuted and ably defended, and it is seldom a record so free of error is presented to this court for review.

Finding no reversible error in the record, it is the opinion of the court that the judgment appealed from should be affirmed; and it is so ordered.

BAREFOOT and DAVENPORT, JJ., concur.