## SHIEVER v. STATE.

No. A-11314.    April 11, 1951.

(230 P. 2d 282.)

38

Ralph B. Simcoe and Guy L. Horton, Stillwater, and Rutherford H. Brett, and J. W. Murphy, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

POWELL, J.  Ed Shiever was charged by information filed in the district court of Payne county with unlawful possession of intoxicating liquor, second or subsequent offense (a charge based on Tit. 37 O. S. A. § 12), though the descriptive label as set out in the first paragraph of the information indicated a charge of being an habitual violator of the prohibition laws of the State of Oklahoma, (which would have been a charge founded on Tit. 37 O. S. A. § 14, and being a section of the statutes that has been heretofore by this court declared unconstitutional and repealed by implication).  This matter will have our attention later on herein.

A motion to suppress evidence was filed by defendant, but no evidence was introduced in support thereof, the basis for suppression being alleged defects in the affidavit for the search warrant and in the search warrant.  Thus, only questions of law were raised.  The motion to suppress was overruled and the defendant was tried before a jury, resulting in a verdict of guilty "of unlawful possession of intoxicating liquor, second or subsequent offense, as charged in

the information", with punishment left to be fixed by the court, who thereafter assessed a fine of $500, and sentenced defendant to be confined in the State Penitentiary at McAlester for a period of one year. A motion in arrest of judgment and for new trial was overruled, and thereafter appeal was duly perfected to this court.

Three propositions for reversal are urged. It is first contended that the court erred in permitting the evidence procured under the search warrant to be introduced over the objection fo defendant, it being contended that:

"(a) The affidavit to obtain the search warrant was insufficient, being based on information and belief and not on specific facts on which a charge of perjury could be predicated.

"(b) The search warrant in this case was invalid, not having been directed by the magistrate to 'a peace officer in his county' naming him, instead of being directed to any Sheriff, Constable, etc., of Payne County, Oklahoma.

"(c) The return on the search warrant was not verified as required by mandatory statute, and is therefore a nullity."

We have carefully read the affidavit for search warrant, and while it is true that the terms are general, they are set out as facts, and the affidavit is made by an officer who had been acquainted with the defendant for many years, and apparently was well acquainted with the premises searched. We do not find any statement purporting to be based on information and belief, but on the contrary do find the allegations to be in definite, positive and specific language, containing (a) the name of Ed Shiever, whose premises were to be searched; (b) that it is stated that said buildings and the private dwelling on said premises is a place of public resort where persons congregate to buy and drink liquor; (c) the exact location of the premises; and (d) statement that intoxicating liquors are being kept, stored and concealed in the building of said premises and in the private dwelling house situated thereon, and being kept, manufactured, stored and concealed for the purpose of being sold, bartered and given away and otherwise furnished in violation of the prohibitary laws of the State of Oklahoma.

It is then stated in the affidavit that the general reputation of the place and premises is that it is a place where intoxicating liquor is being kept, concealed and sold.

We believe the principle of law set forth in Wagner v. State, 72 Okla. Cr. 393, 117 P. 2d 162, 163, hereinafter quoted, to be applicable to the facts in the within case, to-wit:

"4. An affidavit for the procurement of a search warrant should not be based upon information and belief, but should state facts upon which the same is based; but when facts are stated in the affidavit, and the same are positive, and by one who has a right to know the facts, it is sufficient ground for the magistrate to issue the warrant.

"5. In construing the affidavit as a basis for the issuance of a search warrant, the whole affidavit should be considered. While the affidavit and search warrant should be strictly construed, a technical construction should not be placed thereon, which destroys the true meaning."

See, also, McCarthy v. State, 86 Okla. Cr. 51, 189 P. 2d 436; Hughes v. State, 85 Okla. Cr. 37, 185 P. 2d 236; and Young v. State, 74 Okla. Cr. 64, 123 P. 2d 294.

While the affidavit is far from being a model, and could have been improved by detailing of additional facts, we deem the purported facts set forth

and sworn to to be not on information and belief, but upon positive and definite allegations sufficient to comply with the statutory provisions. Tit. 37 O. S. A. § 87 and § 88. The reasoning supporting this conclusion is detailed in the body of the Wagner and Hughes cases above cited.

It is complained that the affidavit in question was on a printed form. This court has held that an affidavit on a printed form is not for that reason invalid. Perry v. State, 83 Okla. Cr. 162, 168, 170, 174 P. 2d 388, 392, 393.

It is contended that the search warrant was illegal and invalid in that it was not directed by the magistrate to "a peace officer" in his county. It was directed as follows: "The State of Oklahoma: To Any Sheriff, Constable, Marshal or Policeman of Payne County, Oklahoma." The applicable statute is Tit. 22 O. S. A. § 1225, reading:

"If the magistrate be thereupon satisfied of the existence of grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, signed by him, with his name of office, to a peace officer in his county, commanding him forthwith to search the person or place named, for the property specified, and to bring it before the magistrate, and also to arrest the person in whose possession the same may be found, to be dealt with according to law."

It will be noted that it is provided that the magistrate shall issue the search warrant to a peace officer in his county. It could hardly be contended that any sheriff, constable, marshal, or policeman of Payne county, Oklahoma, was not a peace officer. The statute does not require that the warrant be directed to a specific peace officer, using his name and title, and setting out that such officer is "a peace officer." Such a construction of the statute would impose a serious limitation that we cannot believe the Legislature intended. No tenable reason for such a construction has been suggested, and we can think of none. Time is of the essence when dealing with law violators, and to require an informant to hunt out a particular officer by name, and who might not be found, would defeat the purpose of the act.

Counsel in his brief cites a number of cases as supporting the contention that the direction in question "amounts to no direction" and is violative of the statute above quoted. We do not find the cases cited to be in point. In one of the cited cases, Riggs v. State, 64 Okla. Cr. 255, 78 P. 2d 1075, 1076, the search warrant was directed to "Any sheriff, Constable, Marshal, or Policeman in this state". Too much territory was included; territory over which the magistrate did not have jurisdiction. It was for such reason that the search warrant was held invalid. In the Riggs case we said: "The warrant must be directed to a peace officer in the county in which it is issued for service." To the same effect was our holding in Bishop v. State, 47 Okla. Cr. 249, 288 P. 363.

In the case of Fowler v. State, 80 Okla. Cr. 80, 157 P. 2d 223, 224, the search warrant was directed to an individual by name, but without stating his official capacity, and was served by other parties not named or designated in the warrant, and not served in the presence of the person to whom the warrant was issued. This court held:

"Where search warrant is directed 'to Elmer Zigler,' without designating his official capacity, if any, the same is insufficient to authorize the execution of said search warrant by W. L. Dixon, deputy sheriff, and L. P. Byerley, policeman, where Elmer Zigler is not present at the time the search is made."

Tit. 22 O. S. A. § 1225 has hereinbefore been quoted. Tit. 22 O. S. A. § 1226 reads:

"The warrant must be in substantially the following form:

"County of————

"In the name of the State of Oklahoma. To any sheriff, constable, marshal or policeman of the county of ————." See also Tit. 22 O. S. A. § 1227.

It will be observed that the exact form for the direction is set out, leaving only the specific county to be named. The warrant in question used the form almost verbatim, supplying the name of the county in which the warrant was issued, and being Payne, and thus limited the search.

In the case of Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135, 143, cited by the defendant, the search warrant was directed to "any sheriff, constable, marshal or policeman in this state", and again by reason of the warrant taking in too much territory it was held to be bad.

We find the warrant complained of sufficient and that the same substantially met the requirements of the statutes above quoted.

The record discloses that the search warrant in question was served by the deputy sheriff on August 28, 1949, the day the same was executed, and though the return purports to have been signed by the deputy sheriff, it is not verified. For such reason defendant contends that the search warrant was made illegal and void. Both of the deputies who conducted the raid testified under oath at the trial that they had found the same amount of whisky on defendant's premises as is shown by the return on the search warrant. The point raised was considered by this court in the case of Patterson v. State, 67 Okla. Cr. 98, 92 P. 2d 1079. Therein we cite the case of Hensley v. State, 53 Okla. Cr. 22, 3 P. 2d 211, 212, and held:

"A search warrant, otherwise valid, which has been executed within ten days from the time it was issued, is not rendered invalid by failure of the officer to make return thereon."

It is next contended that:

"The court erred in not sustaining the motion to suppress the evidence for the further reason that the officers searched at a place other than that described in the search warrant."

As stated, the defendant offered no evidence in support of his motion to suppress, but relied on defects alleged to be apparent on the face of the affidavit for search warrant, and on the search warrant. On motion ot suppress the burden of proof is on the defendant. Plumlee v. State, 78 Okla. Cr. 201, 146 P. 2d 139; Phinney v. State, 90 Okla. Cr. 21, 210 P. 2d 205. We therefore conclude that the court did not err in overruling the motion to suppress based on the ground set out.

On trial the evidence disclosed that Joe Bradley and Ralph White, the deputy sheriffs who made the raid in question, went to defendant's farm after dark, parking their car some distance away, and proceeding across the field; that there was high grass around the house; they noticed three cars come and go, and proceeded to watch the place for a while before making any effort to serve the warrant. Deputy White testified:

"Ed's house sets on a little rise from the road. The driveway is approximately 25 or 30 yards west of the house, driving in a diagonal like this (indicating). Q. In a northeasterly direction? A. Yes, sir, and across from Ed's house there was, at that time, a lot of high weeds and grass. Q. How far is the roadway from Ed's house? A. 150 feet, approximately, I wouldn't know exactly. Q. Did you have occasion to see Ed out there that evening? A. Yes, sir. Q. Where

did you see him? A. Well, first I saw him come out of the house and come towards the highway or right of way, the road, and go east of us a ways,— heard some bottles rattling down there. We was in such a place there we couldn't get out to get Ed at that time. Q. You had weeds all around you? A. Yes, sir. Q. What did he do? A. He went directly back to the house. Q. Which door did he go in? A. He went in the south door which is the kitchen door."

Witness then testified that he went to the place where he saw defendant and searched in the grass and found a fifth of gin. He was asked:

"Where was it? A. It was just across the borrow ditch in some grass, still in what you call the right of way. It was on the outside of the fence, between the fence and the borrow ditch on the south side of the road, travelled road."

Witness then testified:

"We walked directly up this road, the travelled road, the driveway to Ed's house."

Later on the officers found another bottle of gin near where the first bottle was found, or a total of four bottles in the grass south of defendant's home and between the fence and the roadway. Whether the roadway was that leading from the defendant's home to the section line, or on the section line, is not clear. The evidence was admissible, however, at all events, being circumstantial evidence and similar in many respects so far as the liquor found along the roadway is concerned, with the factual situation involving this same defendant in the case of Shiever v. State, 92 Okla. Cr. 239, 222 P. 2d 530. But in addition to this gin, the officers entered defendant's home and served the search warrant on him immediately following the discovery of the first bottle of gin in the roadway where defendant had been seen and heard by the officers, and there they found two more four-fifths bottles of gin in the home. In fact, the officers had to forcibly take the same from defendant's wife and against her will after she had grabbed the same and attempted to run to hide or destroy this evidence.

On trial defendant attempted to show by his single witness, John Alexander, that a guest of the defendant by the name of Williams claimed the gin found in defendant's home, contending that he brought it by to take to a dance with a group assembling at the Shiever home preparatory to departure. The two officers conducting the raid had no remembrance of such claim. The jurors by their verdict evidently believed the witnesses for the state rather than the one witness for the defendant. The defendant did not testify.

The record discloses that counsel for the defendant at trial interposed no objections to the testimony concerning the gin found in defendant's home or to that concerning the finding of the gin in the grass south of the home. When the county attorney offered the gin in evidence, the only objection made by defendant's attorney at the trial was as follows:

"By Mr. Simcoe: I would like specifically to object it was illegally obtained without a legal search warrant, in violation of the constitutional rights of the defendant."

Thus it was not claimed that the gin in question was obtained off the premises of the defendant, or was inadmissible for any other reason than that stated.

It is finally urged that:

"The court committed fundamental error when it gave the jury Instruction No. 4 designating the punishment as a fine of not less than $50 nor more than $2000, and by imprisonment in the county jail for not less than thirty days nor more than five years in the penitentiary under the charge in the information

of being a habitual violator of the prohibition laws, to which instruction defendant excepted and exceptions were allowed."

The information (omitting formal heading) reads:

" * * * that at and in the county of Payne, State of Oklahoma, on the 28th day of August, 1948, one Ed Shiever, then and there being, did then and there wilfully, wrongfully, unlawfully and feloniously commit the crime of being a habitual violator of the prohibition laws of the state of Oklahoma, in the following form and fashion, to-wit: That on the 9th day of October, 1943, the said Ed Shiever was informed against in the County Court of Payne County, Oklahoma, in case No. 7030, duly filed therein on the 9th day of October, 1943, by K. D. Griener, County Attorney, by and through the Assistant County Attorney Wallace Dickey, Jr., for the crime of unlawful possession of intoxicating liquor, to-wit: 4 pints of taxpaid whiskey and 2½ gallons of homemade wine, which said home-made wine contained more than 3.2% alcohol measured by weight, and that on the 9th day of October, 1943, the said Ed Shiever was duly arraigned on said charge and entered a plea of guilty and the court thereupon sentenced the said Ed Shiever to pay a fine of $100 and costs and to be imprisoned in the county jail for a period of 30 days, which said jail sentence was suspended, and that the said Ed Shiever did not appeal from said judgment and sentence.

"That thereafter, on the 23rd day of April, 1946, the said Ed Shiever was informed against in the County Court of Payne County, State of Oklahoma, in case No. 7161, for the crime of unlawful possession of intoxicating liquor, to-wit: ½ gallon and 1½ pint of corn whiskey, 3 4/5 quarts of rum, 9 4/5 quarts of bonded whiskey, and 2 pints of bonded whiskey, and that on the 23rd day of April, 1946, the said Ed Shiever entered a plea of 'not guilty' in said cause and that thereafter, on the 23rd day of May, 1946, the said Ed Shiever withdrew his plea of 'not guilty' and entered a plea of 'guilty' in said cause and was sentenced to pay a fine of $250 and costs, and imprisonment in the county jail for a period of 60 days, and the defendant, Ed Shiever did not appeal from said judgment and sentence.

"That thereafter, and having two times prior thereto plead guilty to the crime of unlawful possession of intoxicating liquor, as aforesaid, and at and in the County of Payne, State of Oklahoma, on the 28th day of August, 1948, the said Ed Shiever then and there being, did then and there wilfully, unlawfully, intentionally and feloniously have and possess a certain quantity of intoxicating liquor, to-wit: 6 4/5ths quarts of taxpaid gin, with the unlawful intent then and there on the part of him, the said Ed Shiever, to barter, sell, give away or otherwise furnish the same to others unlawfully, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Oklahoma.

"Dated this 11th day of October, 1948.

(Signed) "Chilton Swank,
County Attorney."

Tit. 37 O. S. A. § 12 reads:

"For the second and all subsequent convictions for the violation of any of the provisions of this act, the penalty shall be a fine of not less than fifty ($50.00) dollars, nor more than two thousand ($2,000.00) dollars, and by imprisonment of not less than thirty (30) days in the county jail, nor more than five (5) years in the State Penitentiary, and it shall be mandatory upon the trial judge in cases where anyone has been convicted under any provision of this act, to pronounce sentence within ten days from the date of conviction."

Tit. 37 O. S. A. § 14 reads:

"Any person violating any provision of the laws of this state enacted for the suppression of the liquor traffic, commonly called the prohibition laws, who

has theretofore been twice convicted for the violation of any of the provisions of such laws, shall be guilty of being 'an habitual violator of the prohibition laws of this state,' and shall be so charged in the presentment, or indictment, or information, along with the violation of the law, and be tried in the court having jurisdiction of felonies, and upon conviction thereof shall be punished by imprisonment in the penitentiary of this state for not less than one year nor more than five years."

Counsel for defendant asserts that the charge in the information as set out in the first paragraph of the information indicates that it was brought under the provisions of Tit. 37 O. S. A. § 14, whereas the court gave instructions based on Tit. 37 O. S. A. § 12, and that in Harrigill v. State, 90 Okla. Cr. 347, 214 P. 2d 263, section 14 of said statute was declared unconstitutional, and also repealed by implication, and that therefore the information charged no offense. This same proposition was once being interposed by this same defendant in another case against him, Shiever v. State, supra, where the information filed was in form similar to the within information. In that case, we said:

"Where information charges defendant with illegal possession of liquor after two prior convictions for violations of the prohibitory liquor laws the trial court acted properly in submitting the punishment defined by Tit. 37 O. S. 1941, § 12 and not the punishment provided by Tit. 37 O. S. 1941, § 14. * * *

"The introductory paragraph of an information is ordinarily equivalent to a mere descriptive label, and a wrong name given to the crime in that part of an information is an irregularity only and not fatal. The character of the offense must be determined by a consideration of the language contained in the charging part of the information."

While it is true that the amount of gin obtained in the raid in question was negligible, and there was evidence that the defendant, his wife and several friends had assembled at defendant's home and were getting liquored up preparatory to attending a country dance some miles away, and that part of the liquor belonged to others of the party, the question of ownership was for the jury to determine. The court in fixing the punishment took into consideration the former convictions, as by the law permitted. Tit. 37 O. S. A. § 12. However, there is one matter in connection with the punishment imposed that was not argued in defendant's brief, but was set out in motion in arrest of judgment and for new trial, and also in the petition in error filed herein, and being the alleged argument of the county attorney that the jury should leave the punishment to be fixed by the court in case they should have any trouble in agreeing, and then, just after the jury had retired, the county attorney handing to the trial judge a small account book bearing the name of defendant's wife and setting out a long list of whisky and gin sales, but giving no dates; and then followed by the jury actually leaving the punishment to be fixed by the court.

The alleged argument of the county attorney was not reported and is not entitled to consideration, but the county attorney did stipulate that he did hand the book in question to the trial judge, and that it had been in possession of the sheriff in some other case. He acknowledged that his act was without thought but not intended to influence the judge. Of course, the jury did not consider the book because it was not identified and offered in evidence. Whether the book had any influence on the court in fixing the punishment there is no way of knowing. Probably it did not. Still, it may have. Hence the dilemma. The vice is the appearance of the act! The county attorney did something that cannot be justified or approved. Regardless of a defendant's past record as a violator of the law, every effort should be made to see that nothing is done through the agency of the prosecution or the court bearing a semblance of unfairness, questionableness, or inherent irregularity. As Caesar said about his

wife: "Quoniam meos tam suspicione quam crimine ivdico carere oportere", or, as commonly though not literally translated: "Because Caesar's wife must not only be innocent but free from suspicion." Taking heed of the severity of the punishment in view of the facts recited as developed from the record in this case, and in light of the schedule of punishment set forth in the governing statute, Tit. 37 O. S. A. § 12, as above quoted, and in the interest of the integrity of the courts and officers thereof, we feel that justice dictates that the sentence be modified from one year in the penitentiary to three months in the county jail of Payne county, the fine of $500 to stand; and as so modified, the case is affirmed.

BRETT, P. J., not participating. JONES, J., concurs.