Art HALE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12607.

Criminal Court of Appeals of Oklahoma.

Oct. 1, 1958.

Rehearing Denied Oct. 29, 1958.

Anthis & Gotcher, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, Art Hale, hereinafter referred to as defendant, was charged by information in the county court of Muskogee County with the crime of unlawful possession of intoxicating liquor, described as 35 fifths, 56 pints, and 117 half pints of tax-paid whiskey. A jury was waived and the case tried to the court, who found the defendant guilty, and assessed the penalty at a fine of $100, costs in the amount of $21.35, and confinement in the county jail for sixty days.

The within appeal is based on the overruling by the court of a motion to suppress the evidence, filed by defendant on November 18, 1957, and shown to have been heard on December 5, 1957.

Counsel for defendant summarizes his grounds for reversal under two propositions. First, "That the warrant was served by the county attorney of Muskogee County, and not by the sheriff or any of his deputies, and the service was ipso facto illegal and void." Second, "That the search warrant was insufficient and invalid because the magistrate who signed it did not interrogate the officer as to the truth of the affidavit for the search warrant."

We first notice from the motion to suppress that the basis for the claim that the evidence should be suppressed was the contention that the search and seizure was not predicated upon a proper search warrant or a proper affidavit for search warrant. Necessary for the determination of this issue was an examination by the trial court of such instruments. We do not find from the minutes or record where such instruments were ever offered and received in evidence. We do find these instruments made a part of the case-made duly signed and settled, as pages 3 and 4, and assume that the trial court examined these documents and that they were actually received in evidence.

We observe that the affidavit and application for search warrant was subscribed to by Will Vinzant, a deputy sheriff, before Archibald Bonds, Judge City Court, on December 31, 1956. Based on such affidavit, the said Archibald Bonds, Judge City Court, did on December 31, 1956, sign and issue a search warrant directed: "To sheriff, constable, marshal, or policeman in Muskogee County, Oklahoma, or his duly appointed and authorized deputies", and that said warrant directed and commanded said officers to make immediate search of the premises described, etc. The warrant shows on its face that it was issued by virtue of a verified complaint filed by Bill Vinzant. On the back of the search warrant appears a return signed by Bill Vinzant showing: "Received the within writ at 3 P.M. o'clock on the 31 day of December, 1956. That on the 1 day of January, 1957,

I made service thereof by a search of the premises within described, and by seizing the following described liquors, implements, furniture, and fixtures therein kept, to-wit: 35 fifths, 56 pints and 117 half pints intoxicating beverages * * *." Said affidavit and search warrant are shown by endorsements thereon to have been filed in the office of the city court of Muskogee County, Oklahoma, on January 2, 1957.

Both the affidavit for search warrant and search warrant are regular on the face as to contents, issuance and service. But defendant attempted to impeach the recitations of the instruments in question in two respects, and as set out in the specifications for reversal.

Defendant called as a witness Louis Smith, who was county attorney of Muskogee County on January 1, 1957, when the search took place, but was not county attorney at time of hearing of motion to suppress and trial on December 5, 1957.

Mr. Smith testified that he was county attorney on January 1, 1957 and remembered Arthur Hale being searched on that evening. He said that he and deputy sheriff Bill Vinzant were present at the search. He said that he had previously asked Deputy Vinzant if he had a description of the place they were about to raid, and that Vinzant said that he did, whereupon witness asked Vinzant to prepare an affidavit and search warrant, which he did. Witness said that he handed the search warrant to Mr. Hale on arriving at his place.

The defendant, Hale, also testified that the search warrant was handed to him by the county attorney, Louis Smith.

█ We find no statutory provision specifically authorizing a county attorney to serve a search warrant. And even if such a provision existed, we have seen that the warrant was not directed to the county attorney, but "To sheriff, constable, marshal or policeman in Muskogee County, Oklahoma, or his duly appointed and authorized deputies."

Smith occupied the same status, so far as serving the warrant was concerned, as any private citizen. The question is, was the service good?

By 22 O.S.1951 § 1227, it is provided:

"A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer, on his requiring it, he being present, and acting in its execution."

In Seay v. State, 93 Okl.Cr. 372, 377, 228 P.2d 665, 667, a similar question was before this court. There Judge Brett, speaking for the court, said:

"Finally the defendant contends among other things, that the court erred in not sustaining his motion to suppress the evidence. This contention is predicated upon the proposition that Walter D. Bolton, as evidence man for the county attorney's office who procured the search warrant even though commissioned by special commission from the chief of police of the city of Muskogee, had no authority to serve the search warrant in question. We believe this contention to be without merit *since Bolton was accompanied on the raid by police officers Burns and Swanson, both officers authorized under the law and the warrant to execute the warrant.* Bolton picked up the police officers Burns and Swanson at the police station and together they went to the defendant's residence for the purpose of serving the warrant and conducting the search. No doubt the object of picking up the officers was to render the facts surrounding the search above question. *The fact the warrant was in the manual possession of Bolton and was served by Bolton by leaving it in the door of the premises does not invalidate the service, the police officer to whom it was directed being present and acting in its execution.* This we believe was substantial compliance with the statute in relation to service of search warrants. 22 O.S. 1941 § 1227." (Emphasis now supplied.)

See also as bearing on the question, Dunn v. State, 40 Okl.Cr. 76, 267 P. 279; Fowler v. State, 80 Okl.Cr. 80, 157 P.2d 223; Williams v. State, 95 Okl.Cr. 131, 137, 240 P.2d 1132, 31 A.L.R.2d 851.

In the within case the evidence showing that the affidavit for search warrant was executed by deputy sheriff Bill Vinzant and that the warrant was directed to any deputy sheriff of Muskogee County, and that Deputy Vinzant and County Attorney Louis Smith conducted the search in question, Smith in the presence of Deputy Vinzant handing the warrant to Hale, the person whose place was searched, such was sufficient under the terms of the applicable statute quoted above. And good reason supports such proposition. The sheriff is bonded and responsible for the acts of his deputies in line of duty. The officer may be armed. At all events, it is his duty to keep the peace and it may be convenient for him, as the assumption is in the within case, to have a private person who may accompany him to aid in the search hand the warrant to the person to be searched. That is what was done in this case, and was not contrary to the statute.

The case of Bowdry v. State, 82 Okl. Cr. 119, 166 P.2d 1018, cited by the defendant does not support his contention. There the search warrant was specifically directed to a state investigator for service and the service was held good under 74 O.S.1941 § 149. The court went on to hold in effect that even though the warrant was not directed to such state investigator, he could still serve the warrant if some officer to whom it was directed was present and requested it. In the body of the opinion this court quoted from the case of Mitchell v. State, 74 Okl.Cr. 416, 127 P.2d 211, as follows:

"In order for an investigator appointed by the Commissioner of Public Safety to make a lawful search under the above statute, there must be a specific designation in the search warrant directing him to serve the same *or if the warrant is specifically directed to a named officer in a certain county, he may assist such officer if the officer is present and requires his aid.*" (Emphasis now supplied.)

To support his second proposition wherein complaint is made that the magistrate who signed the search warrant did not interrogate the officer signing the affidavit, there is attached as an appendix to the casemade an instrument shown to have been filed December 13, 1957, purporting to have been the result of a motion to suppress heard on November 22, 1957, when the record shows the motion was heard on December 5, 1957. The instrument in defendant's brief is referred to as a stipulation. Though all this is irregular, the instrument purports to have been signed by the county judge and approved by the county attorney, and the portion pertinent to the issue will receive consideration.

The pertinent allegation is:

"That the officer who signed affidavit for search warrant walked into Judge Bonds' chambers and presented, after signing, said affidavit, and the judge did not inquire if the affiant had personal knowledge of the contents of the affidavit and that the officer did not advise the judge that he had personal knowledge of the facts alleged in the affidavit; that upon presenting the affidavit, the judge signed the affidavit and thereupon the judge signed the already prepared search warrant used in this action."

Counsel for defendant then proceeds to argue in brief:

"It is apparent from this agreed statement, that the magistrate affixed his signature to the search warrant without even knowing what was contained in the affidavit. He never inquired from the officer or the county attorney if the facts stated in the affidavit were true, and therefore could not have sworn the officer to the affidavit."

To support his contention that the procedure followed by the examining magistrate constituted reversible error, counsel

cites the case of Southard v. State, Okl. Cr., 297 P.2d 585, 593. We shall quote the language from that case now emphasized by counsel for the defendant, but first we should point out that the basis for the reversal of the Southard case was that the affidavit supporting the warrant to search premises for intoxicating liquor was made upon a printed form containing contradictory allegations, and alleged, as supporting facts, that defendant had the general reputation as being a person who dealt in intoxicating liquors, and that defendant's premises were known as a place where liquor was sold. We said:

"We conclude that the affidavit for search warrant in the within case was based upon information, and belief, and hearsay, and contradictions, and nothing was alleged by affiant that would have been admissible should he have attempted to testify on trial, if his knowledge was so limited."

The language from Southard quoted by defendant reads:

"As a prelude to an analysis of the affidavit, some basic principles should be reviewed. It should be kept in mind that in a long line of cases this court has held that where an affidavit to procure a search warrant is in positive terms, one will not be permitted to go behind the affidavit and show that the officers did not have sufficient knowledge of the charges alleged in the affidavit." (Citing cases.)

"The above rule came about for the reason that an examining magistrate has been recognized as something more than an automaton. It is his duty to examine the affidavit presented to see whether or not it fulfills the requirements of the law, and not only that, to determine that the person presenting the affidavit knows its contents and wants to and does swear to the same. It is a solemn instrument, not to be lightly made, because it is the key that opens the citizen's door to the officers to search his home, or his place of business for evidence of the crime that may be charged. It is the vehicle provided by the Constitution that permits the invasion of the citizen's privacy. Therefore we have said that the affidavit and search warrant should be strictly construed, Linthicum v. State, 66 Okl.Cr. 327, 92 P.2d 381; Mayberry v. State, 62 Okl.Cr. 183, 70 P.2d 1106; Mason v. State, 63 Okl.Cr. 153, 73 P.2d 468; Edwards v. State, 95 Okl.Cr. 37, 239 P.2d 434; though a technical construction should not be placed thereon which destroys the true meaning. Shiever v. State, 94 Okl.Cr. 37, 230 P.2d 282.

"It is well known that many county attorneys, recognizing the great difficulty officers and magistrates have had in preparing affidavits for search warrants that would fulfill the requirements of the law, have prepared printed forms to meet varied situations, where the affiant could mark or strike out such allegations as not applicable to the case at hand, and there are usually blanks for the setting out of additional facts peculiar to the particular case. It is imperative, if the affidavit is to mean anything, that the allegations not applicable and that can not truthfully be sworn to be stricken. This practice, of using printed forms, has been approved in many cases where we have said that the fact that an affidavit for a search warrant is in the main based upon allegations in a printed form, does not invalidate a warrant based thereon if there are sufficient evidentiary facts set out in the affidavit to justify the magistrate in concluding that there was probable cause for issuing the warrant. Griffin v. State, supra [95 Okl.Cr. 421, 246 P.2d 424]; Addington v. State, supra [Okl.Cr., 268 P.2d 912]. But this does not give license to a complainant to indiscriminately affix his signature to an affidavit for search warrant and demand the signature of the magistrate to a search warrant without reading the form or

being questioned by the magistrate concerning the contents."

It will be seen that though we set the examining magistrate up as something more than an automaton, the facts alleged in the identical printed form used in Muskogee County were positive, and sufficient to support the issuance of a search warrant. It may be in the within case that the court knew the defendant and knew that he had a general reputation in the community as a whiskey seller. The defendant may have been before the magistrate before. Such may account for the argued carelessness of the examining magistrate, which would not have been the case if the person against whom, the warrant was sought was some person who was not known by the magistrate as a person bearing the reputation as being a purveyor of intoxicating liquor.

At all events, the deputy sheriff signed the affidavit and the magistrate, well aware of the purpose of the affidavit, proceeded to affix his signature to the acknowledgment.

In the case of Farrow v. State, 71 Okl. Cr. 397–404, 112 P.2d 186, 190, the evidence of the officer who procured the issuance of the search warrant showed that he was not sworn by the justice and did not hold up his hand in taking the oath. The officer's testimony being, however, that he read the affidavit. Here there is no evidence that officer Vinzant did not read the affidavit, but there is evidence that he prepared the affidavit on a printed form, filled in a lengthy description of the premises to be searched, etc. The assumption is, there being no evidence to the contrary, that the officer performed his duty and read the printed allegations to which he swore.

This court said in the Farrow case:

"Apparently defendant bases his contention in respect to this assignment of error solely upon the statement of the deputy sheriff that he did not formally swear to the affidavit by raising his right hand and taking the oath, including an invocation to the deity. It is apparent from the testimony of the magistrate and the deputy sheriff that when the deputy sheriff signed the affidavit and presented it to the justice of the peace with the request for a search warrant it was understood by both parties that said acts of the deputy fulfilled the requirements as to taking an oath, and said instrument was just as valid as though an invocation to the deity had been made.

"It is better practice for the magistrate to formally swear the affiant to the affidavit for search warrant and all other papers which require the administering of an oath for their validity. This court, however, realizes that practically all acknowledgments of deeds, verification of written instruments, including affidavits, are generally perfected by the mere act of signing and handing the same to the party who places his jurat upon the instrument. In legal contemplation, the oath is sufficient. In the instant case, that the justice of the peace deemed the oath completed is evidenced by his act of placing his jurat on the affidavit and going ahead and issuing the warrant, in which warrant he recites that Bill Miller did appear before him, and after being duly sworn, upon oath, stated certain facts which are set forth in the affidavit."

By reason of what has been said, we conclude that, though the irregularities complained of are not approved, and might have a hearing on a reversal if there were other errors of sufficient importance, standing alone, the mistakes complained of are insufficient to cause a reversal.

The judgment appealed from is, therefore, affirmed.

BRETT, P. J., concurs.

NIX, J., dissents.

NIX, Judge (dissenting).

If, in the beginning, the appellate courts had adhered strictly to the law of search and seizure, the law now would be so clari-

fied that a path would have been hewn and could be followed with the greatest of ease. However, the tendency to justify violations of the search and seizure law has permitted the exception to seriously foreshadow the general rule. The constitutional provision establishing the protection against unlawful search and seizure was embedded in the Constitution of our state in clear, simple and concise language, such language as could be easily read and understood by the average layman. It says in Art. 2, Sec. 30:

> "The right of the people to be secure in their persons, house, papers, and effects against unreasonable searches and seizures shall not be violated: and no warrant shall issue but upon probable cause supported by *oath* or *affirmation,* describing as particularly as may be the place to be searched and the persons or things to be seized."

This is the exact language also to be found in the 4th Amendment to the U. S. Constitution. The language, purpose, and intent of the provisions did not come about by virtue of a current event, but by the historical experiences of the constitutional founders and their ancestors. They were alerted to its necessity by the ruthless pillaging of their oppressors. The Legislature of this state made clear the meaning and intent of the constitutional provision by enciting into law a statute to be found in Title 22, Sec. 1223 of O.S.A.:

> "A search warrant shall not be issued except upon probable cause, *supported by affidavit,* naming or describing the person, and particularly describing the property and the place to be searched."

These sections of the Bill of Rights and the statute constitute a pledge of good faith to the people of the state, all alike, that they shall be secure in their houses, papers and effects, against unreasonable search and seizures.

A continued tendency to justify violation of these precious security measures permit a gradual chipping away of the stone upon which they rest. This security has vanished and the pledge violated by the state that guarantees it, when those acting under the authority of the state fail to secure a valid search warrant to search the private residence of a citizen. This court has said:

> "Under provision of State and Federal Constitutions against unreasonable searches and seizures, it is uniformly held that a search warrant must conform strictly to the constitutional and statutory provisions for its issuance, and no presumption of regularity are to be invoked in aid of process under which an officer obeying its command undertakes to justify."

See Morrison v. State, 88 Okl.Cr. 445, 204 P.2d 544, 546.

In the case at bar the facts surrounding the issuance of the search warrant are agreed upon by stipulation in the record as follows:

> "That the officer who signed affidavit for search warrant walked into Judge Bond's chambers and presented, after signing, said affidavit, and the Judge did not inquire if the affiant had personal knowledge of the contents of the affidavit and that the officer did not advise the Judge that he had personal knowledge of the facts alleged in the affidavit; that upon presenting the affidavit, the Judge signed the affidavit and thereupon the Judge signed the already prepared Search Warrant used in this action."

The defense counsel contends that it is apparent from the stipulation that the magistrate affixed his signature to the search warrant without knowing the contents of the affidavit. That he never inquired of the officer or county attorney if the facts stated in the affidavit were true, and therefore could not have sworn the officer to the affidavit.

In the opinion of your writer, no other conclusion can be drawn. The transaction

was strictly a formality for the purpose of expediency and makes pure mockery of the constitutional and statutory prerequisites for obtaining a search warrant. There was no swearing of the affiant; there was no formal oath administered; there was no inquiry made. The affidavit and warrant were prepared by the officer, the affidavit signed and along with the warrant handed to the magistrate and evidently without utterance, the warrant signed and returned to the officer. The Constitution makes it clear that no warrant shall issue except upon probable cause supported by oath or affirmation. The statute says that a search warrant shall not be issued except upon probable cause supported by affidavit.

In a search to ascertain the definition of an affidavit, many cases will be found to establish its meaning. 2A Words and Phrases, Affidavit, page 333, the general accepted definition, states:

"An affidavit is a statement reduced to writing and truth of which is sworn to before some one who is authorized to administer an oath."

The same volume, page 334, cites State v. Finn, 32 Or. 519, 52 P. 756:

"An affidavit is a written declaration under oath, made without notice to the adverse party. To make such a document legal and authoritative in a court of justice, it takes both the affiant and an officer authorized to administer the oath acting together and the oath must be either administered by the officer to the affiant, or asseveration to the truth of the matter contained in the affidavit by the party making it to the officer, with his signature. Without a direct administration of the oath there can be no affidavit under the statute."

The affidavit was never intended to be of little consequence, but is a document to house truth and veracity and never used as an instrument of idle gossip, speculation or presumption. Its use should be guarded carefully and administered under precise procedure.

This court has held in Burns v. State, 92 Okl.Cr. 24, 220 P.2d 473, 475, that:

" ' "True test of sufficiency of complaint or affidavit to warrant issuance of search warrant is whether it has been drawn in such manner that perjury could be charged thereon if any material allegation contained therein is false." ' "

If this were not the law, the avenue would be open for deformation of character of innocent victims by untrue, reckless and damaging statements enhoused in the contents of an affidavit and thereby destroying the probable cause rule for the purpose of expediency. In the case at bar your writer is doubtful if one could be convicted for prejury by reducing his statement to writing where it is stipulated that no oath or affirmation was administered; nor inquiry as to truth made or affirmed. In the majority decision Judge Powell bases his justification upon the case of Farrow v. State, 71 Okl.Cr. 397, 404, 112 P.2d 186, with this case which was indeed similar to the case at bar, your writer does not agree and calls attention to the fact that Judge Jones wrote the decision, Judge Barefoot concurred, and Judge Doyle dissented, and though your author has high regard for the opinions of Judge Jones and Judge Barefoot, your writer has learned from research of the decisions of this court never to consider lightly the opinion of Judge Doyle, and I heartily approve his dissent in the Farrow case.

If the affidavit is to be anything and remain above the category of a piece of paper, it must be made under proper oath and its truth and veracity sworn to before an officer authorized to administer such an oath.

This court in numerous decisions has attempted to place in the hands of examining magistrates, the duty and exclusive responsibility of seeing that the requirements of an affidavit are fully met.

This court said in Southard v. State, Okl. Cr., 297 P.2d 585, 588:

" * * * where an affidavit to procure a search warrant is in positive terms, one will not be permitted to go behind the affidavit and show that the officers did not have sufficient knowledge of the charges alleged in the affidavit. Rausch v. State, 65 Okl. Cr. 52, 82 P.2d 687; Griffin v. State, 95 Okl.Cr. 421, 246 P.2d 424, and a long list of cases cited; Bryson v. State, 96 Okl.Cr. 49, 248 P.2d 253; Crossland v. State, Okl.Cr.App., 266 P. 2d 649; Addington v. State, Okl.Cr. App., 268 P.2d 912."

In placing this responsibility in the examining magistrate of our state, it was to be assumed that they would guard the responsibility carefully and execute it with precision. Judge Powell, in discussing this matter in a very able decision, frequently quoted to this court Southard v. State, supra, and said:

"The above rule came about for the reason that an examining magistrate has been recognized as something more than an automaton. It it his duty to examine the affidavit presented to see whether or not it fulfills the requirements of the law, and not only that to determine that the person presenting the affidavit knows its contents and wants to and does swear to the same. It is a solemn instrument, not to be lightly made, because it is the key that opens the citizen's door to the officers to search his home, or his place of business for evidence of the crime that may be charged. It is the vehicle provided by the Constitution that permits the invasion of the citizen's privacy. Therefore we have said that the affidavit and search warrant should be strictly construed. Linthicum v. State, 66 Okl.Cr. 327, 92 P.2d 381; Mayberry v. State, 62 Okl. Cr. 183, 70 P.2d 1106; Mason v. State, 63 Okl.Cr. 153, 73 P.2d 468; Edwards v. State, 95 Okl.Cr. 37, 239 P.2d 434; though a technical construction should not be placed thereon which destroys the true meaning. Shiever v. State, 94 Okl.Cr. 37, 230 P.2d 282."

"It is well known that many county attorneys, recognizing the great difficulty officers and magistrates have had in preparing affidavits for search warrants that would fulfill the requirements of the law, have prepared printed forms to meet varied situations, where the affiant could mark or strike out such allegations as not applicable to the case at hand and, there are usually blanks for the setting out of additional facts peculiar to the particular case. It is imperative, if the affidavit is to mean anything, that the allegations not applicable and that can not truthfully be sworn to be stricken. This practice, of using printed forms, has been approved in many cases where we have said that the facts that an affidavit for a search warrant is in the main based upon allegations in a printed form, does not invalidate a warrant based thereon if there are sufficient evidentiary facts set out in the affidavit to justify the magistrate in concluding that there was probably cause for issuing the warrant. Griffin v. State, supra; Addington v. State, supra. *But this does not give license to a complainant to indiscriminately affix his signature to an affidavit for search warrant and demand the signature of the magistrate * * * concerning the contents.*" (Emphasis ours.)

It is evident from Judge Powell's decision in the Southard case that examining magistrates are charged with a profound duty of being more than an automaton. They are the designated guardians to protect society from unlawful search and seizure. It is their solemn responsibility to preserve the security prerequisites of obtaining a warrant to search and seize, *by strict compliance with the constitution and statutes of our state.* The provisions of the constitution against the invasion of the privacy of one's home are not ours to relax, puncture with holes, to chip away, or de-

stroy, but belong to all generations and must be preserved for posterity to enjoy as we have done.

Your writer cannot conscientiously approve or lend encouragement to the perfunctory and superficial manner in which the warrant was issued in the case at bar.